UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

VICTORIA ERICKSON                          CIVIL ACTION

VERSUS

PENN NATIONAL GAMING, INC.         NO. 19-00451-BAJ-EWD

## RULING AND ORDER

Before the Court is Defendant's **Motion for Summary Judgment (Doc. 40).** The Motion is opposed. (Doc. 43). Defendant filed a Reply. (Doc. 44). Plaintiff filed a sur-reply in opposition. (Doc. 50). For the reasons stated below, Defendant's Motion is **GRANTED**.

## I. BACKGROUND

Plaintiff worked as a dealer and supervisor in the Table Games Department for Defendant from November 2014 to July 2018. (Doc. 40-5, at ¶ 1). Beginning in January 2016, Plaintiff began to request intermittent leave under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA") due to "her own serious health conditions and complications with fibromyalgia." (*Id.* at ¶ 3). Plaintiff was initially approved for FMLA intermittent leave in 2016. (Doc. 43, p. 5). As a condition of continuing to receive FMLA leave, she was required to recertify her eligibility for leave every six months. (Doc. 40-1, p. 3).

The final time Plaintiff attempted to recertify her eligibility, Defendant ordered her to submit to a medical examination by a physician at Prime Occupational

1

Medicine for a second opinion. (Doc. 40-1, p. 4). The physician did not object to the recertification of Plaintiff's leave, but recommended that she complete a "return to work evaluation" when she returned from her intermittent leave because the physician was concerned "that the medications [Plaintiff] was using could impair her ability to safely perform her job." (*Id.*). On January 17, 2018, Plaintiff's supervisor notified Plaintiff that she was once again eligible for intermittent FMLA leave from January 17, 2018 to July 17, 2018. (Doc. 40-2, p. 77). However, this time Defendant wrote "YOU ARE REQUIRED TO GO TO PRIME OCCUPATIONAL EVERYTIME [sic] YOU USE FMLA INTERMITTENT." (*Id.*).

Plaintiff contacted counsel and was informed that this requirement was unlawful. (Doc. 25, at ¶ 9). Plaintiff alleges that she discussed the requirement with Defendant's Human Resources Department on February 19, 2018 (Doc. 43-1, at ¶ 14). (Doc. 50, p. 2). Thereafter, Plaintiff was suspended on February 21, 2018. (*Id.*). Counsel for Plaintiff responded by sending a letter to Defendant on February 23, 2018 informing it that Plaintiff's suspension (referred to as a termination) as well as the placement of "unlawful interference requirements on her FMLA intermittent leave. . . are likely direct violations of the interference and anti-retaliation provisions of the FMLA." (Doc. 43-5, p. 2). Plaintiff was called to work on February 28, 2018. (Doc. 50, p. 2). On March 9, 2018, Plaintiff was informed "that there was an error" on her FMLA certification form and Defendant removed the requirement. (Doc. 43-6). Following this communication, Plaintiff was never required to return to Prime Occupational. (Doc. 40-1, p. 5).

2

Plaintiff brought this action alleging interference with her rights under the FMLA and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). (Doc. 25, at ¶ 1). Specifically, Plaintiff argues that her February 21, 2018 suspension was in retaliation for and as a result of her conversation with Human Resources two days prior and, as such, constitutes unlawful interference with her FMLA rights in violation of 29 U.S.C. § 2615(a)(1), unlawful retaliation in violation of 29 U.S.C. § 2615(a)(2), as well as an adverse employment decision based on her disability in violation of 42 U.S.C. § 12112(a). *See* (Doc. 25).

Defendant asserts that Plaintiff's suspension was not based on her disability or attempts to assert her rights under the FMLA, but rather because Plaintiff violated company policy the week prior. (Doc. 44, p. 2). Plaintiff was "written up" on February 14, 2018 "for her inappropriate dealings with customer wagers at a blackjack table, failing to immediately notify security of the mistake, and prematurely collecting wagers at the blackjack table" in violation of company policy. (Doc. 40-1, p. 6). Defendant suspended Plaintiff one week later, on February 21, 2018, allegedly to "preserve the integrity of the investigation as well as the parties involved." (Doc. 40-2, p. 32). Plaintiff argues that this was pretextual, as the suspension was only two days after she met with Human Resources. (Doc. 50, p. 4).

Defendant now moves for summary judgment.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be

3

genuinely disputed must support the assertion by citing materials in the record, including "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, [and] interrogatory answers" or that an adverse party cannot produce admissible evidence to support the presence of a genuine dispute. *See* FED. R. CIV. P. 56(c)(1).

"[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and footnote omitted). "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation marks and citations omitted). In determining whether the movant is entitled to summary judgment, the Court "view[s] facts in the light most favorable to the non-movant and draw[s] all reasonable inferences in her favor." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

## III. ANALYSIS

### A. FMLA Claims

#### i. Interference

To prove an interference claim under the FMLA, "a plaintiff 'must at least show that [defendant] interfered with, restrained, or denied [her] exercise or attempt to exercise FMLA rights, and that the violation prejudiced [her]." *Acker v. General Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017) (citing *Bryant v. Tex. Dep't of Aging*

4

*& Disability Servs.*, 781 F.3d 764, 770 (5th Cir. 2015)). Interference "includes not only refusing to authorize FMLA leave but also discouraging an employee from using such leave." *Park v. Direct Energy GP, L.L.C.*, 832 Fed. Appx. 288, 290 (5th Cir. 2020) (citation omitted) (unpublished). "An interference claim merely requires proof that the employer denied the employee his entitlements under the FMLA." *Id.* (citing *Stallings v. Hussman Corp.*, 447 F.3d 1041, 1051 (8th Cir. 2006)).

For an employee to establish a *prima facie* FMLA interference claim, the employee must show that she was an eligible employee; that her employer was subject to FMLA requirements; that she was entitled to leave; that she gave proper notice of her intention to take FMLA leave; and that her employer denied her the benefits to which she was entitled under the FMLA. *DeVoss v. Southwest Airlines Company*, 903 F.3d 487, 490 (5th Cir. 2018). Finally, if such a violation is found, Plaintiff must show "that the violation prejudiced her." *Bryant v. Texas Dept. of Aging and Disability Services*, 781 F.3d 764, 770 (5th Cir. 2015) (citation omitted).

The parties agree that Plaintiff was eligible for FMLA leave, that Defendant was subject to FMLA requirements, and that Plaintiff was entitled to leave. Both parties also agree that, under the FMLA, "[a]n employer is not entitled to a certification of fitness to return to duty for each absence taken on an intermittent or reduced leave schedule," but that such certifications are permissible "up to once every 30 days if reasonable safety concerns exist regarding the employee's ability to perform his or her duties." 29 C.F.R. § 825.312(f). If an employer determines that a safety concern exists, the employer is required to inform the employee that "for each

5

subsequent instance of intermittent or reduced schedule leave, the employee will be required to submit a fitness-for-duty certification *unless one has already been submitted within the past 30 days.*" *Id.* (emphasis added). Therefore, if Plaintiff had been required to obtain a fitness-for-duty certification multiple times in a 30-day period, such a requirement would have been unlawful.

However, the parties diverge when it comes to whether mere articulation of an unlawful requirement, without more, interferes with Plaintiff's FMLA leave. Plaintiff does not argue that she would have requested leave but did not do so because of the policy. Nor does she assert that anyone discouraged her from using her leave. Plaintiff also acknowledges that there was never a time when she requested to use her FMLA leave and was denied because of this policy. (Doc. 40-2, p. 9). Rather, Plaintiff asserts that the entitlement which was interfered with was her entitlement "not to have unlawful restrictions placed on her leave." (Doc. 43, p. 8). Defendant asserts Plaintiff was never actually denied leave and was not prejudiced by the requirement because it was corrected within three weeks. (Doc. 44, p. 3).

Plaintiff has failed to offer support for the argument that the imposition of an unlawful restriction, which was never actually applied to Plaintiff, is *per se* prejudicial to a plaintiff. On the contrary, courts have held that "[a] regulation must not 'relieve[] employees of the burden of proving [] real impairment of their rights and resulting prejudice.'" *Downey v. Strain*, 510 F.3d 534, 540 (5th Cir. 2007) (quoting *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 90 (2002). Instead, "courts evaluating an FMLA claim must conduct a 'retrospective, case-by-case examination'

6

that addresses 'whether the employee would have exercised his or her FMLA rights in the absence of the employer's actions.'" *Id.* Courts have also found that "a plaintiff suffers no FMLA injury when she receives all the leave she requests." *De La Garza-Crooks v. AT&T*, 252 F.3d 436 (5th Cir. 2001) (unpublished) (citing *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1274 (11th Cir. 1999)); *See also Arismendiz v. Univ. of Texas at El Paso*, 536 F. Supp. 2d 710, 716 (W.D. Tex. 2008) ("[T]he undisputed facts and the evidence show that Plaintiff was not actually deterred from asking for FMLA leave and that she received all the FMLA leave that she sought. Accordingly, the [c]ourt finds [d]efendant did not interfere with [p]laintiff's FMLA rights.").

Here, Plaintiff was not prejudiced by Defendant's requirement. Plaintiff argues she was prejudiced because, although she "did not [] lose any wage, salary, or benefit due to the violation because the restrictions were eventually lifted," she nonetheless "was [] required to expend monetary resources for legal assistance in order to obtain that result." (Doc. 43, p. 9). "Prejudice exists when an employee. . . sustains other monetary losses as a direct result of the violation, such as the cost of providing care." *Jones v. Children's Hosp.*, 58 F. Supp. 3d. 656, 669 (E.D. La. 2014) (citing 29 U.S.C. § 2617(a)(1)(A)(i)(II)). It is clear that—with regards to interference—prejudice to the Plaintiff must be related to the actual act of taking leave under the FMLA, not efforts to prevent technical violations of the statute. Attorney's fees, while mandatory under the FMLA, are only discussed in the context of providing fees *following* a finding of liability under § 2617(a)(1), as opposed to being included as "actual monetary losses

sustained by the employee as a direct result of the violation." 29 U.S.C. § 2617(a)(1)(A)(i)(II).

Because Plaintiff cannot demonstrate that she was discouraged from taking or denied leave, or that she was prejudiced as a result of Defendant's unlawful policy, her interference claim fails.

### ii. Retaliation

In the absence of "direct evidence of discriminatory intent" courts apply the *McDonnell Douglas* burden-shifting framework to determine the reason for an employee's adverse employment action. *Tatum v. Southern Company Services, Incorporated*, 930 F.3d 709, 713 (5th Cir. 2019). A *prima facie* case of retaliation under the FMLA requires that an employee demonstrate that she was protected under the FMLA, that she engaged in a protected activity, that she suffered an adverse employment action, and that the action was taken because she sought protection under the FMLA. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 390 (5th Cir. 2013). Once a *prima facie* case is established, "the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* If this burden is met, under the mixed-motive analysis the burden shifts once more to the employee to offer "sufficient evidence to create a genuine issue of fact that the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination." *Id.* In the alternative, plaintiff may provide evidence that the reasons given by defendant are pretext for discrimination. *See Allain v. Bd. of Supervisors of Univ. Of La. Sys.*, 81 F. Supp. 3d 502, 511 (W.D. La. 2015). Finally, if an employee meets this burden, an employer

8

may still seek summary judgment in its favor by "providing sufficient evidence to establish as a matter of law that it would have taken the adverse employment action despite its retaliatory motive. *Ion*, 731 F.3d at 390.

As noted, Plaintiff is protected under the FMLA. That she suffered an adverse employment action (her suspension) is not in dispute. The question is whether the adverse action was taken because Plaintiff met with Human Resources to discuss the requirement that she visit Prime Occupational Medicine when she took FMLA leave. Plaintiff can establish causality by demonstrating that the temporal proximity of her suspension coincided with the meeting with Human Resources. *See Mauder v. Metropolitan Transit Authority of Harris County, Tex.*, 446 F.3d 574, 583 (5th Cir. 2006) ("When evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the 'temporal proximity' between the FMLA leave, and the termination.").

Viewing the evidence in the light most favorable to the nonmoving party, the Court finds that the two days between Plaintiff's meeting and her suspension is sufficient to establish a *prima facie* case. The burden now shifts to Defendant to demonstrate that the suspension was not related to Plaintiff's FMLA leave. Here, Defendants have articulated a legitimate, nondiscriminatory reason for Plaintiff's suspension—she violated company policy for the fifth time. (Doc. 44, p. 7). Plaintiff was disciplined on February 14, 2018 for violations of company policy while manning a blackjack table. (Doc. 44, p. 6). Plaintiff was subsequently suspended for seven days, pending further investigation. (Doc. 40-2, p. 32). This evidence serves to rebut

9

Plaintiff's *prima facie* claim of retaliation, as "the violation of work rules is a legitimate, non-discriminatory reason for an adverse employment action." *Arismendiz*, 536 F. Supp. 2d at 717.

### a. Pretext Alternative

Plaintiff has not produced sufficient evidence of pretext to overcome summary judgment. A plaintiff may establish pretext "by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Jackson v. Cal–W. Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010) (quoting *Tex. Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). Whether summary judgment is appropriate "depends on numerous factors, including 'the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered.'" *Piper v. Veneman*, 183 Fed. Appx. 407, 410 (5th Cir. 2006) (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148–49 (2000)).

Plaintiff has not presented a strong *prima facie* case. While the temporal proximity between the meeting with Human Resources and her suspension is very close, it is also very close to the inappropriate workplace conduct for which she was purportedly suspended. (Doc. 40-1, p. 5). In addition, temporal proximity alone is insufficient to overcome an employer's legitimate reason for taking an adverse employment action where there is other uncontradicted evidence that the basis was legitimate. *See Anderson v. New Orleans Jazz & Heritage Festival and Foundation, Inc.*, 464 F. Supp. 2d 562, 571 (E.D. La. 2006) ("When there is overwhelming and uncontradicted evidence that an adverse employment action was taken for other

10

reasons, mere temporal proximity between the adverse action and an employee's protected activity is insufficient to raise an issue of fact as to whether an employee was fired for taking leave."); *See also Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 335 (5th Cir. 2005) (temporal proximity in addition to hostile remarks are sufficient to raise an issue of fact as to whether retaliation was a motivating factor in plaintiff's termination); *Leal v. BFT, Ltd. Partnership*, 423 Fed. Appx. 476, 480 (5th Cir. 2011) ("a plaintiff who 'creates only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred' cannot survive summary judgment."); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999) ("[T]he combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment.").

As proof that Defendant's explanation was false, Plaintiff alleges that Defendant "convey[ed] a negative attitude toward Plaintiff's requested leave, and Defendant was seeking out a reason to be able to deny this request." (Doc. 50, p. 6). To support this claim, Plaintiff provides an email from the Defendant's Director of Human Resources, Kizzy Smith, discussing concerns that Plaintiff's December FMLA certification request seemed "off." (Doc. 50-1, p. 2). Smith writes that she was concerned about Plaintiff's paperwork because of the number of conditions she requested leave for, and the fact that her "conditions were diagnosed from an *arthritis doctor*" which Smith found "questionable." (Doc. 50-1, p. 1).

While Plaintiff is correct that hostile sentiment can raise a genuine issue of

11

veracity, the email message presented does not do so. The message is clear that Plaintiff's FMLA leave was approved, despite Smith's misgivings. Plaintiff has provided no evidence to show that Smith ever said that she disagreed with Dr. Fabre at Prime Occupational Medicine's decision to concur with the approval for leave. (Doc. 50-1, p. 2). The email message is not sufficient to establish causation, or hostile motivations. Indeed, Smith explicitly stated that "[i]t is never our goal to deny a team member their rights to FMLA." (Doc. 50-1, p. 1). The information in the message reflects Defendant's concerns that it consistently apply FMLA leave and only grant leave for conditions that are covered under the FMLA. *Id.* These sentiments are similar to those expressed in the email messages provided as evidence in *Smith v. Southwestern Bell Tel. Co.*, 456 Fed. Appx. 489, 493 (5th Cir. 2012). In *Smith*, the court found that an email which "targets employees who abuse FMLA leave, not those who properly exercise their rights under the FMLA" was insufficient to support a pretext analysis for an FMLA claim on summary judgment. *Id.*

To further support her claims that Defendant's reason was pretextual, Plaintiff notes that on previous occasions where she had been "written up", she was never subsequently suspended. (Doc. 50, p. 5). Plaintiff argues that this inconsistency with prior disciplinary actions makes "[i]t [] obvious that a hunt for a reason to suspend (or further discipline) Plaintiff started *after* she had a meeting with Human Resources." (*Id.*). Plaintiff asserts that "[a] trier of fact could determine that Defendant was fed up with Plaintiff's ongoing need for FMLA leave." (Doc. 50, p. 6).

This argument fails for three reasons. First, Plaintiff has not established that

12

her suspension was contrary to a policy, but merely notes that it was out of step with the four previous handlings of her disciplinary procedures. That alone is insufficient to rebut a claim of pretext. Plaintiff has not pointed to any company policy that indicates when or how quickly an investigation must be resolved, or how soon after an infraction a suspension pending investigation must begin. Even if Defendant had violated its own policy in suspending her a week after her "write up," an employer's disregard of policies "does not of itself conclusively establish that. . . a nondiscriminatory explanation for an action is pretextual." *Laxton v. Gap, Inc.*, 333 F.3d 572, 581 n. 3 (5th Cir. 2003) (quoting *EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1182 (5th Cir. 1996)).

Second, courts have found that where an employee has previously demonstrated unacceptable workplace conduct, the proximity of a given adverse employment action to the FMLA leave is not sufficient to rebut an employer's articulated legitimate reason for taking said action. *See Tatum*, 930 F.3d at 714 (finding no evidence of retaliation when an employer terminated an employee who had a record of poor workplace conduct following his FMLA leave); *Smith*, 456 Fed. Appx. at 492 (finding no evidence of retaliation where plaintiff was terminated following her mistreatment of a customer).

Third, Plaintiff was suspended in February and she continued to be employed for nearly five months after her suspension, until she committed her sixth workplace offense and was terminated. (Doc. 40-1, p. 11). Plaintiff testified in her deposition that she took FMLA leave "four or five times, maybe," while she worked for

13

Defendant, and each and every time that she applied it was approved. (Doc. 40-2, p. 6). By her own admission, there was never a time when she requested FMLA leave and was denied. (Doc. 40-2, p. 9). Obviously, this does not support Plaintiff's allegation that Defendant was "seeking out a reason to be able to deny the request." (Doc. 50, p. 8). This case is, once again, analogous to *Smith* were the court found that "[t]he alleged discriminatory animus against [plaintiff] for taking FMLA [was] further belied by [defendant's] offer to allow [plaintiff] to keep her job, subject to a period of probation." *Smith*, 456 Fed. Appx. at 493.

The email is not sufficient to establish that Defendant's motivations were pretextual, nor is there other evidence in the record which supports Plaintiff's assertions. No reasonable factfinder could conclude that Defendant's discipline of Plaintiff was for any reason other than her violation of Defendant's workplace policy.

### b. Mixed-Motive Alternative

Plaintiff may also prevail if she shows sufficient evidence to create a genuine issue of fact that the employer's stated reason for disciplining her is but one of the reasons for its conduct, another of which was discrimination. For the same reasons articulated above, Plaintiff has not, and cannot, show that Defendant's motive was "but one" of the reasons for her suspension. Based on the record, it was the only reason. Plaintiff has presented neither direct nor circumstantial evidence, beyond temporal proximity, sufficient to establish a causal connection between her meeting with Human Resources and her suspension.

Because there is insufficient evidence of discriminatory or retaliatory animus to create a genuine issue of material fact as to the reason for Plaintiff's suspension,

Plaintiff's retaliation claim fails as a matter of law.

### B. ADA Claims

Plaintiff also contends that her suspension was "based on disability discrimination" in violation of the ADA, 42 U.S.C. § 12112(a). (Doc. 43, p. 10). Once again, because Plaintiff has not provided direct evidence of discrimination, she must proceed under the same *McDonnell Douglas* burden-shifting analysis as her FMLA claim. *Rodrigues v. Eli Lilly and Co.*, 820 F.3d 759, 764 (5th Cir. 2016). To prevail on an ADA discrimination claim, Plaintiff must first establish a *prima facie* case of discrimination by demonstrating that "(1) [s]he is disabled within the meaning of the ADA, (2) [s]he is qualified and able to perform the essential functions of [her] job, and (3) [her] employer discriminated against [her] because of [her] disability." *Butler v. Exxon Mobil Corp.*, 838 F. Supp. 2d. 473, 485 (M.D. La. 2012) (citations omitted). Without addressing whether Plaintiff is disabled or qualified to perform the functions of her job, Plaintiff's ADA claim fails for the same reason as her FMLA claim—she cannot establish that her suspension was due to her disability.

Even if she could meet her *prima facie* case, the record provides no evidence to rebut Defendant's assertion that the suspension was not pretextual. Plaintiff cannot show that but for her disability the suspension would not have occurred, as the suspension was purportedly triggered by an investigation into her improper workplace conduct which had occurred the week prior. (Doc. 40-4, p. 4–5). Once an employer "offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive." *Roberson v. Allitel Info. Servs.*,

373 F.3d 647, 655 (5th Cir. 2004).

Plaintiff argues that the email correspondence "alone is enough to show pretext and that her medical conditions had an influence in Defendant's decision making." (Doc. 50, p. 7). However, in the context of the ADA, Plaintiff's argument is even weaker. Nowhere in the email message does Defendant make any negative or derogatory assertions about Plaintiff's medical conditions. Defendant's correspondence solely addressed Plaintiff's FMLA leave and whether it was valid. (Doc. 50-1). While Plaintiff asserts that "a trier of fact could determine that Defendant had grown tired of Plaintiff's medical conditions and was looking to get rid of someone who was an ongoing problem," (Doc. 50, p. 8), the record does not support that inference.

There is no evidence in the record that anyone who worked for Defendant or was involved with Plaintiff's suspension acted in a manner that was either a pretext for discriminating against Plaintiff because of her disability, or that Plaintiff's disability was a motivating factor in her suspension.

## IV.  CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's **Motion for Summary Judgment (Doc. 40)** is GRANTED. Plaintiff's claims against Defendant are **DISMISSED WITH PREJUDICE**.

A judgment in accordance with Federal Rule of Civil Procedure 58 shall issue.

Baton Rouge, Louisiana, this 25th day of March, 2021

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**